UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America *ex rel.* MARLON PORTER, | |
| Petitioner, | No. 10 C 3081 Judge James B. Zagel |
| v. | |
| DAVE REDNOUR, Warden, Menard Correctional Center, | |
| Respondent. | |

## MEMORANDUM OPINION AND ORDER

This is a petition for a writ of habeas corpus filed under 28 U.S.C. § 2254 by Marlon Porter, prisoner No. R30867, incarcerated at the Menard Correctional Center in Menard, Illinois. Petitioner Porter is serving sentences for first degree murder and personally discharging the firearm that caused the victim's death. He is sentenced to fifty years in prison for the homicide and a consecutive sentence of twenty-five years for firing the fatal bullet.

The details of the crime itself, while uncommon in real life, are the grist of the melodramas seen on made-for-cable-television movies. Petitioner Porter was seventeen years old when he shot a twelve year old boy in the back, killing him. No warning was given. The crime was perpetrated at the behest of a co-defendant named Lakesha Woodard, a woman a bit older than Porter. Woodard wanted to retaliate against another young man who was involved in a "prior altercation" in which Woodard's face had been cut. On the day of the murder in 2000, Woodard picked up Porter in a car, handed him a pistol, pointed out a young man on the street and told Porter to kill him. The boy, twelve-year-old Orlando Patterson, was not Woodard's target, she had mistaken him for the teenager who had harmed her.

Porter and Woodard were tried in a consolidated proceeding in which two separate juries sat, one to decide Porter's case and the other to decide Woodard's. Woodard was convicted and received a forty-year sentence for murder and a consecutive sentence of twenty years for solicitation to commit murder.[1]

On his direct appeal, Petitioner did not contest the sufficiency of the evidence used to sustain his convictions. The Appellate Court noted the following

> defendant does not challenge his conviction, but contends that his sentence is excessive and should be reduced by this court based on his subordinate role in initiating and planning the offense, and due to his young age, limited criminal history, and significant potential for rehabilitation. Defendant also contends that his 75 year sentence is unreasonably disparate to the 45 year term imposed on codefendant for the same offense because she had a greater share of culpability and demonstrated a lesser potential for rehabilitation.

*People v. Porter*, No. 1-05-1589 (Ill. App. filed Aug. 17, 2006). The Appellate Court also affirmed Woodard's appeal of her own conviction, noting that she was only twenty years old, had no prior criminal history herself and was seeking revenge against someone who had injured her by inflicting "a severe cut to her face, which required several stitches and reconstructive surgery." See *People v. Woodard*, 854 N.E.2d 674, 687 (Ill. App. Ct. 2006). The judge who presided over the trial of both Porter and Woodard could conclude that an individual who murders in the course of seeking revenge for a serious personal injury is a bit less culpable then one who murders simply because a friend asked him to do so. To put it another way, killing in cold blood could be viewed as worse than hot-blooded violence.

---

[1] The Appellate Court found the following facts in its opinion affirming Porter's conviction and sentence. [insert copy from appellate passage quoted in response to the petition.

Petitioner submits the same argument here with an increased emphasis on disparate sentencing. The argument fails for two reasons.

First, on direct appeal, the argument against the sentence was never based on federal constitutional claims, in particular under the Eighth Amendment. It was addressed to the state reviewing court's power to review sentences on the merits and reduce them as it saw fit. Possible grounds for the review include excessiveness or disparity between like defendants, an authority legislatively conferred on it some time in the mid 1900's. There is no ground for believing that a constitutional issue was even raised, given that the power to review (and reverse) sentencing decisions is committed to the state's reviewing courts by legislative action - not by constitutional compulsion, as is the case in federal courts. Construed this way, the argument fails as a non-cognizable issue on habeas review.

Even if it had been made as a federal constitutional claim, it would fail. There is no precedent supporting the proposition that seventy-five years is an unconstitutional sentence for a "cold-blooded execution" perpetrated by a seventeen year old personally shooting a twelve year old in the back for no better reason than someone asked him to do it.

Petitioner recognizes that an "excessive" sentence argument is weak and, so, places his emphasis on receiving seventy-five years for a murder while his co-defendant received forty-five years. This argument is based on an improper effort to equate apples with almonds. For the murder, Petitioner's sentence is fifty years, co-defendant's sentence is forty-five years, a relatively small difference. The same five-year difference exists between the two enhancement penalties. Petitioner was given a twenty-five year consecutive term for personally discharging the firearm that caused the boy's death, while Woodard was given a twenty-year add-on for

solicitation.  Thus, the final sentencing comparison is seventy five for Petitioner to sixty five for Woodard.  In seeking leave to appeal from the Appellate Court to the Supreme Court of Illinois, petitioner limited his claim to disparity between Woodard and himself.  The pure claim of excessive sentence was not presented to the state court and may not be relied upon here.

The state court judge who, on the record, considered petitioner's arguments that he deserved a lesser sentence and had the advantage of hearing the petitioner speak either in allocution or his taped confession concluded that the person who killed Patterson was more culpable than the person who recruited the killer.  It is a reasonable finding within constitutional constraints on sentencing.  The person who pulls the trigger can properly be found, in many cases, to be more culpable than the person who asked him to do it.  Actions are often more important than words and a judge could fairly find in this case that actions were indeed more culpable than words.  The petitioner cannot make a case that his sentence entitles him to the writ. See *Williams v. Illinois*, 399 U.S. 235, 243 (1970).

When the time came for post-conviction relief, Petitioner claimed trial counsel was ineffective for withdrawing a motion to suppress evidence due to arrest without probable cause and for testifying at the post-trial hearing on his *pro se* motion for a new trial which testimony was inconsistent with the facts related to petitioner's arrest.  Petitioner also claimed that his appellate counsel on direct appeal was ineffective for failing to object that Porter was not allowed to cross-examine a witness.  This is a pointless claim since the witness did not actually testify at trial.  In a supplemental pleading Petitioner claimed his counsel at trial was ineffective for withdrawing a motion to suppress his involuntary confession as was his appellate counsel for failing to raise the issue on appeal.

All these claims failed in various ways and times and proceeding in circuit court, appellate court and on petition for leave to appeal in the Illinois Supreme Court. *See People v. Porter*, 861 N.E.2d 661 (Ill. 2006).

In his petition here, Petitioner is down to (1) his sentence disparity claim which, for the reasons stated above, does not help him, and (2) his ineffective counsel claim based on withdrawal of the probable cause motion to suppress, on counsel's testimony against the *pro se motion* for a new trial, on counsel's failure to move to suppress the confession and, finally, on appellate counsel's failure to raise this on appeal.

Petitioner did not present to the appellate court all the issues he seeks to raise here in pursuit of the writ. The attacks on defense counsel were not raised in Petitioner's appeal from the denial of his post-conviction hearing. The appeal raised the procedural claim that the circuit court failed to adjudicate his supplemental claims against counsel for withdrawing the motion to suppress an involuntary confession and against appellate counsel for failing to raise the issue on direct appeal. The appeal from the post-conviction ruling also attacked the ruling that Petitioner pay a fee for filing a frivolous petition. These issues are no ground for habeas corpus relief in this case. *See O'Sullivan v. Boerckel,* 526 U.S. 848 (1999); *White v. Godinez,* 192 F.3d 607 (7th Cir. 1999).

The claims other than those based on sentencing[2], are not properly alleged and it is easy to see why Judge Dernbach found the state court petition to be frivolous.

---

[2]To support his disparate sentence claims, Petitioner discusses his background, age, and words of contrition. The details are, however, unsupported, and he offers legal conclusions and not enough facts to support them even if true.

Porter's trial counsel, a lawyer quite familiar with criminal practice, failed, Petitioner says, to seek suppression of a confession because Porter was taken into custody without probable cause.

The probable cause he complains about is based upon hearsay so the arrest was illegal. He omits any description of what Woodard told the police so we have no grounds to believe that Porter could prove lack of probable cause (and he is the one who must prove his claims in this kind of proceedings).[3] A very large number of warrants and warrantless arrests are made on hearsay. Hearsay is admissible to establish probable cause when it might not be admissible to prove guilt. Moreover, even if the arrest were made without probable cause, there is no absolute rule that post-arrest statements are excluded from evidence. *Brown v. Illinois,* 422 U.S. 590 (1975). That determination is to be made on all the circumstances of the confession, none are set forth by Porter, who himself was witness to his own confession and the circumstances under which it was made.

With respect to the motion to suppress, Porter had filed a *pro se* demand for a new trial based on defense counsel's withdrawal of the motion to suppress. By filing the motion he opened the right to inquire of defense counsel why defense counsel withdrew it. Defense counsel said that he did so because police reports and testimony at trial showed that Woodard had

---

[3]Porter says he was arrested on November 18, 2000 and Woodard herself did not confess and implicate him until November 19, 2000. The Appellate Court in *Woodard* found that Woodard identified Porter as the assailant of Patterson and did so on the evening of November 17. *People v. Woodard*, 854 N.E.2d 674, 682 (Ill. App. Ct. 2006). I am not bound by *Woodard* but it does suggest why Judge Dernbach found the claims frivolous. Porter himself recognizes the difficulty of his contention about the timing of his identification that he was the assailant since he states in the petition that "the fact that Woodard implicated Petitioner before his arrest does not mean that the implication, standing alone at the time, was enough to establish probable cause to arrest." I believe Porter now concedes that the identification prior to arrest is a "fact."

6

implicated Petitioner before his arrest. Porter fails to accept that decision whether to pursue a motion to suppress is one to be made by competent counsel.[4] Even if he could challenge the decision, nothing that Porter sets forth shows this to be a flawed decision on the part of defense counsel. Indeed, the apparent likelihood that Woodard did identify Porter before his arrest meant the motion was pointless. The odds that defense counsel could mount a serious motion to suppress were effectively nil. Porter was not a witness to Woodard's identification of him, he could offer no proof that she made the identification after Porter's arrest.

A competent defense counsel would also recognize that if Porter continued to contend that Woodard identified him after his confession, a sentencing judge might consider this as aggravating conduct.

The petitioner urges that "conflict counsel" should have been appointed to represent the petitioner at the hearing. He has no right to have such counsel. He does not allege that he asked for "conflict counsel" or suggest what that counsel might do to aid him. The quite vague allegations that his confession was involuntary because of unstated length, physical coercion and absence of a concerned adult are not enough to justify a hearing on his claims even if they were

---

[4]In 2009 Petitioner received a letter from an Assistant Appellate Defender. The letter specifically refused his request to raise the issue, stating:

> your trial counsel provided ineffective assistance for withdrawing the motion to quash arrest and suppress evidence because probable cause was based only upon the hearsay statement of your co-defendant. For the reasons we discussed in our previous phone conversation, however, I have determined that this is not an issue than can be raised on your behalf.

Porter (perhaps unwisely) attached this as an exhibit to his response to the Warden's Answer in this case. His flawed theory, advanced in his response to the Warden's Answer is that defense counsel is required to raise at least one or more of the arguments suggested by the client.

properly before this Court. Porter is capable of setting forth specific facts and his failure to do so on a second round of post-conviction petitions cannot be overlooked.

Essentially Petitioner does not attempt to prove why his defense counsel's decision not to pursue the confession issue constituted ineffective assistance of counsel. He just says that the motion *might* have been successful without telling us why.

Obviously if trial counsel has not been shown to be ineffective, the failure of appellate counsel to raise the issue is justified.

The 2009 amendments to the rules governing § 2255 proceedings command that "the district court must issue or deny a certificate of appealability when it enters a final judgment adverse to the applicant." Such a certificate should be issued only where Petitioner has made a "substantial showing of the denial of constitutional right." 28 U.S.C. 2253(c). I decline to issue a certificate of appealability for any issue raised in the petition for a writ of habeas corpus. There is nothing reasonably debatable in my disposition of any of Petitioner's procedural or substantive contentions.

The petition for the writ of habeas corpus is DENIED..

ENTER:

James B. Zagel
United States District Judge

DATE: July 25, 2012